The next case is United States v. Raymond Morales. Here's a note for you. I'm really sorry. I left my glasses. What? Yeah, so it's in the roping room. Good morning. Good morning, Your Honor. My name is John Wallenstein. I represent Raymond Morales. This is an appeal which primarily concerns the sentence which Mr. Morales received from Judge Furman in the district court. He was sentenced to a total of 216 months, 60 months consecutive to 156 months. And we assert that the government breached the plea agreement. But this was exactly the sentence provided for in the plea agreement, wasn't it? What? Yes or no? The plea agreement provided for a sentence in the range of, I think, 327 months, someone in that, presumably, as the defendant was a career offender. That made – that's another issue that I have now raised in light of the Jones case, and I think that that is significant because Mr. Morales bargained for a particular sentence and stipulated to a particular sentence in the guideline based on the fact that he was, in fact, a career offender. And in light of Jones and Johnson, it appears that he may not be a career offender. And I think that that mistake of law, which was made by everybody – That's not actually before us, is it? Well, it is in fact what I raised with myself in that plea by commission of the court with respect to the Jones issue, but I do understand that this court has stayed the mandate of the Jones, waiting for the Supreme Court to act in beckles. So I'll just take my place and put it in the line, I guess. Okay. But I do think that all of these issues kind of flow into each other. The government advocated for a stipulated guideline marriage based on a particular drug quantity amendment. And then at the time of sentencing, it's our position that he breached – that the government breached that agreement by advocating for a higher drug quantity, which Judge Furman advocated for as well, having presided over the trial of the co-defendant, Mr. Bahama, and having presided over the sentencing of Mr. Robinson, which the government's brief cites extensively. Why wasn't it more fair to construe the government's statements regarding the larger quantities as responsive to an implicit question of the courts, which needs to reconcile the two quantities? This all came out of the same drug conspiracy, and it would be odd for the government to be taking a position on Thursday that was different from what the court had just found on Friday, in essence. Isn't that more fair than to characterize it as kind of going out of its way to advocate for a different quantity? Well, I think that by – I mean, the government had to know at the time of the plea agreement what the actual drug quantity was involved in the entire conspiracy. That doesn't necessarily apply to Mr. Morales, who didn't need to know that. He was a small part of the conspiracy, or a large part of the conspiracy, but it doesn't matter. He wasn't the whole conspiracy. The government, on the other hand, said to Judge Furman, well, you know, we didn't really know because the assistant – who, by the way, is no longer in the office, I understand, so blaming the absent assistant – he didn't drill down far enough on the cooperators at the time of Mr. Morales's plea agreement. But that can't be right because it was only a few days before the trial. But that suggests that they – what you're saying, then, is that they stipulated to a quantity, knowing that they weren't going to keep that agreement that was kind of entered into in bad faith. But Judge Furman found there had been no bad faith, right? I don't think there's really bad faith in entering into the agreement. I think that by advocating at sentencing, which was some months later and after Judge Furman had already made it clear what he thought the right drug amount was when he sentenced Mr. Robinson, I think that at that point the government should have said, well, we made a deal and we stand by it. Well, they sort of do say that. It's just they are between a rock and a hard place, right? They say, oh, we think you should stick to the agreement, but we have to acknowledge when you ask us that the facts are not quite what we stipulated to. Now, the real problem here is – or at least the technical problem that you may be raising – is here they, in this sentencing, initiated that discussion. But as Judge Carney pointed out, it's a little unrealistic to say they're coming out of the blue with an unsolicited expansion of the drug amount when, in this very indictment, in the Robinson case, in a prior sentencing, the judge jumped all over them on the theory that tell me what the real drug amount is, and they had to answer that honestly. I see your point. But I think that what happened here was that in Robinson the government got beat up by Judge Furman on the drug amount. There was no question about that. So now when it comes to Mr. Morales, I think they feel the need to get out front, as you say, and point out to Judge Furman initially that, well, we said that in our plea agreement, but it's really what you found in the Robinson case. So the issue is you're suggesting it's reversible error because they should have stood mute or stood by their plea agreement until Judge Furman beat them up again, at which point they're entitled to answer his question. I mean, is that the argument, really? Not really. Part of the problem here is that Judge Furman says, you know, you're fact bargaining. You're not supposed to be fact bargaining in your plea agreements. But isn't that exactly what we do every day? And isn't that what happened in the second count of this indictment? They let him plead to the 5-year 924 instead of the 7-year 924 or the 10-year 924. So we do engage in fact bargaining. We agree that I'll plead guilty to this drug amount. You'll sentence me based on that. But the difference is in the 924 issue, they've got absolute discretion. If they choose not to charge a crime, the judge has nothing to do, at least as far as the mandatory minimum is concerned. The judge can still impose a higher sentence if the judge feels like it or thinks that the facts justify it. But with respect to the drug amount, it's a guideline calculation. The judge has responsibility for making an accurate guideline calculation, and we have held that the government is required or permitted, and the plea agreement permits them, to answer questions from the court. So it's kind of, you know, you're a little bit at your peril. I mean, I realize this sort of undermines plea bargaining. I mean, that's a good thing. Maybe there would be more trials if defense lawyers said, I can't bargain with you because you're going to come back afterwards and say this isn't the right drug amount. I want to contest those facts. I want to go to trial. I couldn't agree with you more. We do need more trials. But this is hardly the forum for that sort of discussion. But I do think that the parties have the right to say, we've agreed that this is the drug amount, and that's the amount that the guidelines should be based upon. And if I can just touch for a minute, because I see that my time has gone, on the career offender issue, if Jones stands, you've stayed the mandate, but if Jones stands, then I think that this has to go back, because he's clearly not a career offender if Jones is correct. Thank you, counsel. You have reserved three minutes for rebuttal. We'll hear from the government. Good morning. May it please the Court, I'm Noah Falk, an assistant United States attorney for the Southern District of New York, and I represent the United States on this appeal. Because the government did not breach the plea agreement when it responded to the district court's inquiries concerning the appropriate drug amount at issue for this defendant, this Court should dismiss this appeal as violative of the defendant's appeal. What's the difference between this case and Robinson, where this Court held that the government did breach the plea agreement? Your Honor, this Court found that the government breached the plea agreement in Robinson based on the government's affirmative assertion in its sentencing submission that Robinson was a manager of the conspiracy sua sponte outside of the bounds of the plea agreement and without the court inquiring as to Robinson's. Indeed, with the judge saying, I never thought of that. Correct, Your Honor. It inspired Judge Furman to consider the issue, and that's why it went beyond the scope of the plea agreement. And in this case, wasn't the amount of drugs agreed to in the plea agreement? It was, Your Honor. There was an amount stipulated to in the agreement. However, it was clear from previous co-defendants' sentencings that the court was concerned about a disparity between the stipulated drug amount in the agreement and the amount of drugs that were found at trial. And so the government, anticipating correctly the court's concerns, raised the issue in its sentencing submission. However, I would note that the government was very clear that it was standing by the stipulated sentence and guidelines range reflected in the plea agreement and requested a sentence in line with that range. That's the sentence that was imposed, isn't it? That's correct, Your Honor. In fact, it was substantially below the stipulated guidelines range. Right. But that's the career offender part of the plea agreement, right? Yes, Your Honor. So the question, I guess, I would have is a bit hypothetical. If it turns out to be the case that the career offender calculation is found to be erroneous, somewhere down the road, I guess we're waiting for the Supreme Court now and then there may be further litigation in Jones, and at some point we'll get to that issue. If we get to that issue and the appellant wins, then don't we have to – doesn't that change the game? Because the argument that, well, we stood by the career offender thing is now no longer in play and the fallback calculation on the drug amount is what would determine the sentence. Well, yes, Your Honor, except that assuming that the court finds that the government did not breach the plea agreement, then we would say that the Jones argument is foreclosed by the appellate waiver. And this Court has, in United States v. Blackwell, which is case number 15-1031, actually stated to that effect, that the appellate waiver would bar raising a Jones issue, assuming that the defendant received the benefit of the barring of the plea agreement. Have you submitted a response to the supplemental yet, or is that still to come? I have not, Your Honor. And that response is going to – that's the argument – one of the arguments anyway you're going to make is that he can't take advantage of Jones because of the appeal waiver and the plea agreement. That's correct, Your Honor. If the court finds, which it should not, that the government breached the plea agreement, then the government would stipulate to a resentencing. So I'm also troubled, though, by the entry of the guilty plea in the plea agreement in March 22, 2013, the guilty plea on that basis in April. And then five days later, Bahama's bench trial begins, and the amounts go from 280 to 480 grams under the plea agreement, directly to 840 grams to 2.8 kilograms. And the same people are all involved, and so you're entering into a plea agreement that does not reflect the scope of the conspiracies the government later sets out to prove and offers to cooperating witnesses to get there, and then later on finds itself kind of advocating, or at least stating that the conspiracy, again, involves this larger amount. It just smacks of not good faith in the initial plea agreement. And you're now talking about invoking an appeal waiver based on that plea agreement, which the government's getting the benefit of a higher amount and really in essence advocating for a longer sentence than was discussed in the agreement initially. What am I missing in the equities of the situation? Well, Your Honor, let me take the second part of your question first. The government requested and received a sentence in line with the stipulated guidelines range, which was driven by the career offender guidelines. So, in fact, the fact that Judge Furman found that there was an additional drug-weighted issue beyond the amount of drugs stipulated to in the plea agreement actually had no effect on the ultimate sentence because the career offender guidelines drove the sentence. Well, is that right? I mean, I thought, am I mistaken that Judge Furman gave a sentence below the career offender guideline? That is correct. Well, then how can you say it's driven by that? The judge thought career offender, you know, that's too much. The sentence that's given by those guidelines, that's the guideline calculation because he's a career offender, which he may not be. But I think that's too much. So now I'm going to give a sentence that I think is appropriate. Now, how is that sentence then not affected by the drug amount? That would certainly be a factor, wouldn't it, that the judge would consider in deciding what level of sentence to give other than the career offender sentence? Well, I think it's fair to say, Your Honor, that the amount of drugs at issue informed the court's ultimate sentence. And isn't that why the government bothers and the defendant bothered to stipulate to a drug amount? I mean, it might have been possible to negotiate an agreement that says, well, we don't have to worry about the drug amount in this case because the sentence is driven by career offender. He stipulates to these prior convictions. And so we stipulate that this is the correct guideline sentence. The drug amount is there because it could affect the sentence regardless of what the guideline, the ultimate guideline is. I think it's fair to say that, Your Honor. So then I'm just having trouble with the argument that if there is a breach with respect to the drug amount, which I'm not saying there was, if there was, it affects the sentence. It's a factor that has to be taken into account. And to say, well, the ultimate stipulated guideline range had to do with the career offender guideline doesn't answer that. Well, Your Honor, I mean, I would say that it does, just only in so far as when the government agrees to a sentencing range that is driven by the career offender guidelines. But don't you also agree to other things? This agreement does not only stipulate to what the ultimate guideline range is. It doesn't only stipulate to career offender. It also stipulates to the drug amount, which, as we've just agreed, is something that could influence what the sentence is, either because the judge thinks career offender shouldn't be applied at all or because the judge thinks, well, the career offender guideline is what it is and I'm going to follow it, but I might decide whether I'm at the bottom of that or at the top of that based on the drug amount. So I'm just not seeing how if there is a breach by the government advocating for a different drug amount than it's stipulated to, I don't see how that could possibly be irrelevant or not in play just because there's another stipulation that might have more effect on the sentencing or might not. I take your point, Your Honor. I guess the situation here is that the government wasn't advocating for a specific drug quantity at all. In fact, it was really the court that was driving the inquiry. The government merely affirmed that the court had gotten it correct. But that's a different argument. And, you know, I see that argument, and we have to deal with it, that because the judge effectively asked this question the week before in somebody else's sentencing or the month or whatever it is before, the government has to answer the question proactively. But that's a different argument than the one you were making that says we don't have to get there because we've got this career offender stipulation. No, I understand, Your Honor. I guess what I would say to that is that, first of all, the government wasn't advocating, as we discussed, for a different drug quantity, so there wasn't a breach. Second of all, while I take your point that the stipulated drug quantity is meaningful with respect to the plea agreement, what I'm saying is that the stipulated sentencing guidelines range, which is what the government, which is really the operative, most important, I think, operative. Maybe the most important, but that's not to say the other things that you stipulate to can be disregarded ad lib. No, and nobody is saying that, Your Honor. If that's the point that you've gotten from my argument, then it's certainly not what I'm trying to say. I see my time is up. Can I just ask? Maybe it's premature or unnecessary, so I won't ask you to say anything. I'll just say something. We've got this Jones decision. Maybe it's now out of the government's hands to the extent that the court has stayed the mandate and we're going to wait for the Supreme Court first. But I know that Jones is an Eastern District case, and they got the usual extension of time to file for rehearing and bank because of the need to consult the Solicitor General. Since that time, I've seen at least one case, Cornegay, where I'm on the panel, where the government conceded that we should send the case back because of Jones, which that was a Southern District case. And now we've got this case where, you know, maybe your argument is going to be that Jones is resort to Jones is precluded by the appeal waiver. But I'm just going to say it would be good for the government to get its act together on what its position is on Jones. Is Jones binding authority that absent the plea waiver we should have to apply, or is the government going to come back and tell us not to apply Jones? And pending whatever is going to happen in Jones or whatever else the court does, what should we do with a case like this one? You know, maybe this case, your answer is going to be it doesn't matter because of the appeal waiver. But if we reject that argument, then what? Are you agreeing that we should wait for the Supreme Court or wait for the potential rehearing petition or whatever else we ought to do? Because there are a lot of these in the pipeline, and it's not clear to me that the government is taking necessarily consistent positions. Maybe they are, and I don't want to criticize them. It would be good to know what the government's overall position is on all the cases in the pipeline that might be affected by Jones. Well, Your Honor, I would just point out that the Corngay consent was prior to the mandate. Yeah. You stayed here. Right. But that does suggest that maybe the government, at least the Southern District, wasn't thinking that there's going to be a petition for rehearing and banking Jones that would, you know, make Jones more problematic. That's the problem. Okay. Thank you. Thank you, Counsel. Mr. Wallenstein, you've reserved three minutes for rebuttal. I think the primary point here is that if, in fact, you find that the government breached the plea agreement, then the appellate waiver is irrelevant, and then we're back to Jones. And I think that's the posture that this case is in. You know my position with respect to their breach. If you find that they did breach by advocating for the higher drug amount, then the appellate waiver is inoperative and Jones now comes into play because now Mr. Morales is no longer a career offender if Jones stands. There's a lot of ifs in that sentence. I recognize that. But I think that's pretty much what I have, unless any of Your Honors have a question. I don't. Thank you. Thank you very much. We'll reserve decision.